# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | |
| WARD, KENDALL LLOYD and ) | Case No. 04-02669-TLM |
| WARD, CARRA MICHELLE, ) | |
| ) | |
| Debtors. ) | MEMORANDUM OF DECISION |
| ) | |
| _____ ) | |

**INTRODUCTION**

Sometimes relatively "small" cases raise relatively "big" issues. In such cases, given the amounts in controversy, litigants often negotiate mutually agreeable resolutions. No such settlement occurred here, leaving the Court to evaluate and resolve the parties' distinctly different views on a chapter 13 debtor's ability to modify a confirmed plan. This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law on the contested matter. Fed. R. Bankr. P. 7052, 9014.

**BACKGROUND AND FACTS**

It is relatively easy to summarize the situation.

Kendall and Carra Ward ("Debtors") filed a voluntary petition for chapter 13 relief on July 28, 2004. Doc. No. 1. They owned, at filing, a 1987 Chevrolet

MEMORANDUM OF DECISION - 1

Suburban. They purchased this three-quarter ton, diesel powered vehicle in January, 2004. Debtors valued the vehicle at $3,250.00, and they claimed a $3,000.00 exemption in it. *Id.* at schedule B, schedule C.

Debtors chapter 13 plan proposed to pay Vista Auto Sales ("Creditor")[1] $3,000.00 for the vehicle at an interest rate of 9%, pursuant to § 1325(a)(5)(B). *See* Doc. No. 3.[2] Creditor raised no objection to confirmation, and the plan was confirmed on November 8, 2004. *See* Doc. No. 22. Given Creditor's proof of claim,[3] some $2,500.00 of Creditor's claim was rendered unsecured by Debtors' "cram down" on the debt.

According to Debtors, the Suburban had electrical problems and difficulties prior to confirmation. Debtors believe it would cost between $800.00 and $1,600.00 to repair these problems and that, without the repairs, the vehicle is unsafe as well as unreliable. In addition, although Debtors were aware prior to confirmation that the vehicle had exceedingly poor gas mileage, they argue that post-confirmation increases in fuel prices make the vehicle overly expensive to

---

[1] The secured creditor is actually Y2K, Inc, a financing entity for vehicles purchased through Vista Auto Sales. No issue is raised in the present case concerning the naming of or notice to the Creditor in the plan or the later appearance of Y2K, Inc. through counsel, and the Court will simply refer to "Creditor" in this Decision.

[2] Why Debtors' plan proposed to pay Creditor less than the scheduled value of the vehicle is unexplained.

[3] *See* Claim No. 6, filed September 10, 2004, asserting a $5,567.54 secured claim.

MEMORANDUM OF DECISION - 2

drive.

On February 25, 2005, Debtors proposed a modification of their confirmed chapter 13 plan. *See* Doc. No. 37. They proposed to "surrender" the Suburban to Creditor in satisfaction of Creditor's secured claim, to reduce their plan payments to the Trustee by the amount previously dedicated to Creditor's claim under § 1325(a)(5)(B), and to use tax refunds to make a down payment on a replacement vehicle. Creditor objects, contending that § 1329 does not allow Debtors to modify their plan in the manner suggested, relying primarily on the decision of this Court in *In re Holt,* 136 B.R. 260, 92 I.B.C.R. 13 (Bankr. D. Idaho 1992). *See* Doc. No. 41.

Pursuant to notice, a hearing was held on April 5, 2005. The matter was taken under advisement upon the conclusion of post-hearing briefing by Debtors and Creditor.

**DISCUSSION AND DISPOSITION**

    **A.**     **Does the law allow the suggested surrender of collateral through modification of a confirmed plan?**

On its face, the issue presented is straightforward. May chapter 13 debtors, after confirming a plan treating a creditor as partially secured under § 1325(a)(5)(B), later modify that plan to surrender the collateral to the creditor in satisfaction of the allowed secured claim and treat any deficiency as unsecured. Despite the seeming simplicity, a review of the case law indicates that a great

MEMORANDUM OF DECISION - 3

many issues may be implicated. These issues have created a distinct split in the decisional law.

In *Holt*, this Court took a stand on the issue, the Honorable Alfred C. Hagan stating:

> I conclude the return of the vehicle is not an allowed modification under Section 1329 under the theory of [*In re*] *Sharpe* [122 B.R. 708 (E.D. Tenn. 1991)]. Further, it does not appear to be fair and equitable to allow a debtor the continued ability to elect to retain or return secured property during the full term of the plan.
>
> It is doubtful Congress intended to afford the debtor the options available under 11 U.S.C. § 1325(a)(5)(B) and (C) throughout the life of the plan. 11 U.S.C. § 1329(a)(1) ought to be limited to adjustments in amounts of payments under the plan as opposed to material changes in the treatment of secured creditors.

136 B.R. at 260-61.

This Court respects its prior decisions and departs from them only for compelling reasons. *In re Cent. Idaho Forest Prods.*, 04.4 I.B.C.R. 159, 162 n.10 (Bankr. D. Idaho 2004) (citing *In re DeBoer*, 99.3 I.B.C.R. 101, 103 (Bankr. D. Idaho 1999).[4] *DeBoer* indicates that changes or developments in relevant case law

---

[4] It was incumbent upon Debtors, in making their motion, to acknowledge the existence of *Holt* and to explain why it should not be followed. *DeBoer* 99.3 I.B.C.R. at 103. Debtors' Motion, Doc. No. 37, did not do so. Debtors did not address *Holt*, which foreclosed their suggested modification, until after Creditor raised the objection and cited to it. In addition to violating *DeBoer*, this failure raises potential issues under Fed. R. Bankr. P. 9011(b)(2). However, there is no indication that Creditor raised Rule 9011 issues in compliance with the several requirements of that Rule. Further, the parties were given an opportunity to address the authorities after the April 5 hearing and did so. The Court concludes that admonishing Debtors for their inappropriate conduct in not proactively addressing *Holt* is sufficient remedy under all the circumstances of this case.

MEMORANDUM OF DECISION - 4

may constitute compelling reason to depart from this Court's prior decisional law. Here, the precise issue presented in *Holt* has gained a great deal of attention in the years following *Holt*'s publication in 1992.

Certain courts adhere to the conclusion reached in *Holt*, though upon much more detailed analysis and, in some cases, for other reasons. Principal among these decisions is the only Court of Appeals' resolution, that of the Sixth Circuit in *Chrysler Financial Corp. v. Nolan (In re Nolan),* 232 F.3d 528 (6th Cir. 2000). That court's conclusion was perhaps presaged by the manner in which it cast the issue:

> There has been a debate over whether section 1329 allows a debtor to modify a confirmed plan to surrender collateral for a secured claim (the value of which typically will have been significantly reduced) and then reclassify any deficiency as an allowed, unsecured claim to be paid back at the general pennies-on-the-dollar rate set forth in the plan for unsecured debts.

232 F.3d at 531. *Nolan* concluded that a debtor could not modify a plan in such a manner under § 1329, laying out at least five reasons for its decision. *Id.* at 532-35.

The Sixth Circuit's decision is not universally embraced. After discussing *Nolan* and other cases with similar holdings, the authors of a respected bankruptcy treatise note that "[o]ther courts have held to the contrary, based on a more careful and complete reading of the Code." 8 Collier on Bankruptcy ¶ 1329.04 [1], 1329-8 (Alan N. Resnick & Henry J. Sommer, eds., rev. 15th ed. 2004).

MEMORANDUM OF DECISION - 5

The Court has carefully reviewed *Nolan*, the cases it cites, and the decisions discussed in Collier.  Additionally, the Court has analyzed the litigants' briefs and the decisions cited therein, and it has conducted its own research.  Much has been written on the subject, and it would be unnecessary and inefficient to recite all of the arguments and contentions advanced in this debate.  A relatively brief summary will suffice, and the Court directs the parties to the authorities noted for a more complete and detailed explanation of the issues and their resolution.

The Court concludes that several more recent decisions disagreeing with *Nolan* – and with *Holt* – are persuasive.  One such cogent, thoughtful analysis of the issue can be found in *Bank One NA v. Leuellen*, 322 B.R. 648 (S.D. Ind. 2005). The *Leuellen* court concluded that the language of § 1329 allows for such a modification so long as the statutory requirements of § 1325, incorporated by § 1329, are met.  322 B.R. at 652-55.[5]  *Leuellen* continues with a detailed analysis of the arguments advanced in *Nolan* and an explanation of why a careful reading of the Code negates those arguments.  *Id.* at 655-62.  Chief among that court's several reasons for discounting the concerns of *Nolan* is the fact that modifications are subject to the good faith requirements of § 1325(a)(3), which enables a court to protect against abusive manipulation of the Code or abusive treatment of creditors.

---

[5] This Court has previously recognized that § 1325 requirements are applicable when a modification is proposed.  *See In re Flaming*, 03.4 I.B.C.R. 240 (Bankr. D. Idaho 2003); *In re DeFrehn*, 03.3 I.B.C.R. 175 (Bankr. D. Idaho 2003).

MEMORANDUM OF DECISION - 6

Additionally, a creditor's concern over receiving a substantially depreciated asset through a post-confirmation surrender can be safeguarded by a creditor's ability to object to confirmation unless the timing and amount of payments under § 1325(a)(5)(B) in the original plan are at least equal to the rate of depreciation. *Id.* at 659 (citing, *inter alia, In re Townley,* 256 B.R. 697, 699-700 (Bankr. D.N.J. 2000)).

*Leuellen* does not stand alone. Reaching similar conclusions, again on extended analysis, are *In re Knappen*, 281 B.R. 714 (Bankr. D.N.M. 2002), and *In re Arencibia*, Doc. No. 01-40647, 2003 WL 21004969 (Bankr. S.D. Fla. April 1, 2003).[6]

The parties have not cited, and the Court has not located in its research, any controlling Ninth Circuit Court of Appeals' decision on the issue or any direct Bankruptcy Appellate Panel authority. However, within our Circuit, other bankruptcy courts have validated a debtor's ability to make such a modification. *See In re Zieder,* 263 B.R. 114 (Bankr. D. Ariz. 2001); *see also In re Mason*, 315 B.R. 759 (Bankr. N.D. Cal. 2004) (quoting at length and following *Zieder*).

---

[6] *Arencibia* notes that another respected bankruptcy treatise, Bankruptcy Judge Keith Lundin's book, *Chapter 13 Bankruptcy* (3d. Ed. 2000), includes a comprehensive review of the decisions and a "well reasoned analysis" of the Code, and that it concludes § 1329 permits such modifications. *See* 2003 WL 21004969 at *2. *See also Leuellen,* 322 B.R. at 661 n.5 (citing both Lundin and Collier); *Knappen,* 281 B.R. at 719-720 (discussing William L. Norton, Jr., Norton Bankruptcy Law and Practice 2d, § 124:3 (2001) and Lundin).

MEMORANDUM OF DECISION - 7

*Zeider*, like *Leuellen*, is a detailed and persuasive rebuttal to *Nolan* and similar cases.

Under the weight and persuasiveness of the developing case law and treatise analysis, this Court concludes there is no *per se* prohibition on the suggested modification. This Court thus respectfully disagrees with the conclusion announced in *Holt* and concludes that sufficiently compelling reasons justify departing from it. *In re DeBoer*, 99.3 I.B.C.R. at 103.

### B. Can Debtors' proposed modification be approved in this case?

Creditor argues that even if this type of modification is allowable, Debtors' concerns regarding the Suburban existed prior to confirmation and do not now present good cause to modify. In many ways, Creditor appears to be arguing that there must be a "material" and "unanticipated" change in circumstances to support a modification under § 1329. To the extent that earlier decisional law discussed or implied such a condition, it is clear that it is not a prerequisite to modification. *See Flaming*, 03.4 I.B.C.R. at 241 n.8; *DeFrehn,* 03.3 I.B.C.R. at 176. It is therefore not an absolute impediment to modification that the fuel inefficiency of the Suburban was a known problem at confirmation and that the vehicle's mechanical unreliability was at least in part known prior to confirmation.

A modified plan must meet the confirmation standards of § 1325(a), including the good faith requirement of § 1325(a)(3). *In re Flaming*, 03.4 I.B.C.R.

MEMORANDUM OF DECISION - 8

at 242. The several cases discussed above note the importance of this requirement in the context of the proposed surrender of collateral through post-confirmation modification. *See, e.g.*, *Leuellen,* 322 B.R. at 660-61 (noting that the good faith requirement and the requirement of court approval of a modification upon notice and hearing "provide important checks against debtors indulging their internal 'whims' or engaging in the 'subterfuges' feared by the *Nolan* Court."). In the Ninth Circuit, good faith requires an analysis of the totality of circumstances and an inquiry into whether debtors have misrepresented facts, unfairly manipulated the Code, or otherwise made their proposals in an inequitable manner. *See Goeb v. Heid (In re Goeb),* 675 F.2d 1386, 1390 (9th Cir. 1982).

Creditor is therefore correct that the extent of Debtors' pre-confirmation knowledge is a relevant fact. But other relevant facts include the post-confirmation increase in mechanical difficulties experienced with the Suburban and the impact of quickly rising gas prices. Nothing in the record before the Court indicates Debtors have abused the vehicle. Similarly, nothing in the record indicates that there has been excessive depreciation over and above the amounts Creditor received under the plan's § 1325(a)(5)(B) provisions, leaving Creditor unfairly exposed due to Debtors' decision to surrender through modification.[7]

---

[7] The Court notes that Creditor's post-hearing brief presented an "alternate defense" in the nature of a compromise, under which it would release its lien upon receipt of an amount equal to the balance of the $3,000.00 cram down figure less the payments actually made through the
(continued...)

MEMORANDUM OF DECISION - 9

To be sure, Debtors' epiphany occurred not all that long after their plan was confirmed. Given their pre-confirmation knowledge, Debtors perhaps should have surrendered the vehicle in the plan under § 1325(a)(5)(C). Were other facts presented, in addition to timing, suggesting Debtors intended to improperly manipulate the Code or gain some advantage through confirming and then quickly modifying their plan, the propriety of the modification would certainly be open to question under the good faith requirement of § 1325(a)(3), incorporated by § 1329. But no such additional facts were proven.

For all the foregoing reasons, the Court concludes that Creditor's objection is not well taken and the same will be overruled. Nevertheless, the Court also concludes that the proposed modification cannot be granted at this time. Perhaps due to their focus on the significant legal issue debated with Creditor, Debtors have overlooked some important details.

Debtors' motion proposes to acquire a replacement vehicle. Testimony at hearing indicated that Debtors have not yet located a replacement vehicle nor determined precisely the amount of any needed down payment or what the monthly impact on their budget will be. Under all the circumstances, the Trustee

---

[7](...continued)
plan. *See* Doc. No. 45 at 2. Though the offer was not accepted, it provides some indication that the timing and amount of plan payments were at least equal to the rate of depreciation from and after the effective date of the § 506(a) valuation of the vehicle. *See, e.g.*, *Leuellen,* 322 B.R. at 659 (discussing *Townley* 256 B.R. at 699-700).

MEMORANDUM OF DECISION - 10

and creditors are entitled to fact rather than assumption.

Moreover, Debtors propose to use tax refunds as a way of making a down payment. However, the plan provides that tax refunds shall be turned over to the Trustee for the initial 36 months of the plan. Doc. No. 3 at 2. The Trustee appropriately withholds his consent to the use of the tax refunds until need is established. In addition, the record is not clear that Debtors have provided copies of their income tax returns to the Trustee for his analysis. That certainly must occur before modification is ordered.

Finally, Debtors' motion, Doc. No. 37, indicates Debtors amended their exemption schedules to claim a certain portion of their tax refunds, representing an earned income credit, as exempt. *Id.* at 1-2. While the docket contains an entry indicating that Debtors amended schedules B, C, I, and J, *see* Doc. No. 36, a review of that entry reveals no amended schedule C. The Trustee's post-hearing comments concerning the absence of a claim of exemption appear to be well taken. *See* Doc. No. 46.

Once Debtors have identified a replacement vehicle and determined how much is needed for a down payment and what the monthly debt service would be, it would appear simple enough for the issues addressed above to be clarified. The Court will therefore deny the motion to modify at the present time, without prejudice to renewal when the details of the proposal can be more clearly

MEMORANDUM OF DECISION - 11

presented. Given the lack of opposition to the earlier motion to modify by creditors generally, the Court will allow Debtors to bring on a renewed motion to modify on notice solely to the Trustee and Creditor.[8]

The Court presumes, from the tenor of the arguments advanced, that Debtors' proposed modification to surrender the Suburban to Creditor is inextricably linked to their proposed modification to use the tax refunds that otherwise would go to the Trustee and their request to reduce their monthly plan payments. That is to say, the Court does not believe Debtors wish to modify and surrender the Suburban to Creditor if their additional modification requests are denied or deferred. So, until such time as the entirety of the modification request is clarified under § 1329, Debtors shall be obligated to perform their confirmed plan including payments to Creditor. As discussed above, these ongoing payments protect Creditor against depreciation in the vehicle pending any such modification.

**CONCLUSION**

Creditor's objection, Doc. No. 41, arguing that Debtors are prohibited from modifying their confirmed plan to surrender collateral previously crammed down under § 1325(a)(5)(B), will be overruled. In addition, Debtors' motion to modify,

---

[8] Of course, should Debtors' renewed motion to modify impact creditors in excess of what was earlier anticipated under the original motion, Doc. No. 37, additional notice to all creditors would be required.

MEMORANDUM OF DECISION - 12

Doc. No. 37, will be denied without prejudice to renewal once the details regarding the budget adjustments, use of tax refunds, and related matters have been clarified. An appropriate order will be issued.

DATED: May 31, 2005

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 13